IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:09-CR-00838 |
| | ) | |
| ANTONIO CARDENAS, | ) | REDACTED TRANSCRIPT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE THE HONORABLE CLARK WADDOUPS

June 18, 2012

Sentencing Hearing

Laura W. Robinson, RPR, FCRR, CSR, CP
351 South West Temple
8.430 U.S. Courthouse
Salt Lake City, Utah 84101
(801)328-4800

**Appearances of Counsel:**

For the Plaintiff:        Carol A. Dain
                                    Attorney at Law
                                    U.S. Attorney's Office
                                    111 South Main Street
                                    Suite 1800
                                    Salt Lake City, Utah 84111

For the Defendant:       Jeremy M. Delicino
                                    Attorney at Law
                                    Jeremy Delicino LLC
                                    9 Exchange Place
                                    Suite 600
                                    Salt Lake City, Utah 84111

1        **Salt Lake City, Utah, June 18, 2012**

2                          **\* \* \* \* \***

3        THE COURT:  We are here in the matter of the *United*

4   *States versus Antonio Cardenas,* case 2:09-CR-838.  Will

5   counsel please state their appearance.

6        MS. DAIN:  Carol Dain for the United States.

7        MR. DELICINO:  Jeremy Delicino on behalf of

8   Mr. Cardenas.

9        THE COURT:  Thank you.  We are here for sentencing.

10  Let's begin with a discussion of the calculation of the

11  guideline range.  The base offense level in this case begins

12  at 32.  Any objection to the starting level of 32?

13       MS. DAIN:  No, objection.

14       MR. DELICINO:  Judge, if I could have just a moment to

15  confer with the government?

16       THE COURT:  You may.

17       MR. DELICINO:  Judge, I think that some of the

18  confusion may be because of the two presentence reports and

19  the first draft and the second draft.  I noticed that it

20  looks like about a week ago that the probation department

21  filed an objection sheet or an addendum, and then under

22  modifications it indicates the parties agree that it was

23  appropriate to cross reference to 2G2.1.  I have spoken to

24  Mr. Manross about that characterization, and I think it was

25  a misunderstanding between myself and Mr. Manross.  My

1     position was that his initial report was correct although I

2     can understand the basis for the cross reference and the

3     other enhancements that are applied.

4          And so I think that the modifications as suggested

5     that I made the agreement maybe isn't entirely accurate just

6     that it was my position that Mr. Manross had been correct

7     initially.

8          THE COURT:  Just so the record is clear, I'm using the

9     presentence report that was -- has the revised date of

10     June 7, 2012.  And based on the cross reference as you

11     indicated, that produces a guideline range of 32.

12          Ms. Dain, does the United States want to be heard on

13     whether that's the correct base offense guideline.

14          MS. DAIN:  Your Honor, I think it's fairly clear that

15     the guidelines do indicate that while the charge itself is

16     the transportation of a minor across state lines to engage

17     in sexual activity, the guidelines are fairly clear, I'm

18     sorry I didn't know this was going to be disputed or I would

19     have got case law to support this, but it certainly on its

20     face it says that if there is any production, sexual

21     exploitation of a minor involved in the production of the

22     child pornography, you are supposed to refer back to the

23     guideline 2G2.1 which is the production of child pornography

24     offense if those guidelines are greater.  And certainly that

25     is the case in this matter and I believe it does apply.

1          MR. DELICINO:  And judge just for the record, I think

2     that if the court finds that the cross reference applies

3     that there are no objections that the defense has with

4     respect to the guideline calculations and I think that is

5     the only issue for the defense.

6          THE COURT:  Thank you.  I believe that the cross

7     reference does apply in that the appropriate base offense

8     level is 32 and will so find.  In Paragraph 47, there is a

9     four level enhancement based upon the age of the victim.

10    Any objection to that enhancement?

11         MS. DAIN:  No objection.

12         MR. DELICINO:  None, judge.

13         THE COURT:  Paragraph 48, there is a two level

14    enhancement based upon the fact that the offense involved

15    the commission of sexual acts or sexual contact which I

16    believe seems to be clearly supported in this case.  Any

17    objection to that two level enhancement?

18         MS. DAIN:  No objection.

19         MR. DELICINO:  No, judge.

20         THE COURT:  Paragraph 49 increases the level by four

21    based upon the use of sadistic or masochistic conduct or

22    depictions of violence.  Any objection to that enhancement?

23         MS. DAIN:  No, Your Honor.

24         MR. DELICINO:  No.

25         THE COURT:  Paragraph 50 has an additional two level

1     enhancement based upon the fact that the defendant was in a

2     position of supervisory custody or care.  Any objection to

3     that enhancement?

4          MS. DAIN:  No, Your Honor.

5          MR. DELICINO:  No, judge.  And in Paragraph 51, a two

6     level enhancement based upon the distribution of the

7     pornographic material.  Any objection to that enhancement?

8          MS. DAIN:  No, Your Honor.

9          MR. DELICINO:  No, judge.

10         THE COURT:  That results in a total of 46 for which

11    there is a three level reduction placing the total offense

12    level at 43.  The criminal history results in a score of

13    zero placing the defendant in a criminal history category of

14    one.  Any objection to the criminal history category?

15         MS. DAIN:  No, Your Honor.

16         MR. DELICINO:  None.

17         THE COURT:  Are there other objections to the

18    presentence report or other information that should be

19    corrected?

20         MS. DAIN:  Not to the amended report, judge.

21         MR. DELICINO:  No, Your Honor.

22         THE COURT:  All right.  The court finds that the

23    guideline range has been correctly calculated and will

24    accept the presentence report as submitted.

25         Based on the guideline range of 43 with a criminal

1    history category of one, the guideline range provision is

2    lifetime sentence with a mandatory minimum of 30 years in

3    prison, with a supervised release term of a minimum of five

4    years with a lifetime supervised release being possible.  We

5    will talk about the fine and restitution in a moment.

6         Ms. Dain, how does the United States wish to proceed

7    at this point?

8         MS. DAIN:  Your Honor, at this point if the court

9    would allow, I would like to call the individuals who would

10   like to address the court first.

11        THE COURT:  You may proceed.

12        MS. DAIN:  Thank you.  Your Honor, this is Mrs. Xxxxxx

13   Xxxxxx.

14        THE COURT:  If you would just state your name for our

15   record so that the court reporter can get an accurate

16   record.

17        MS. DAIN:  May I approach?  May I approach?

18        THE COURT:  Yes.

19        MS. CRONIN:  Carol here, that's just the IEP summary.

20        Your Honor, I brought a couple of pictures of my son

21   so that you can kind of get a sense of the type of person

22   that he is.  I have also brought a summary of his IEP so

23   that you can kind of glance over his history in school and

24   some of the problems that he has had to face since these

25   crimes were committed against him.

1        Um, he was diagnosed with a learning disability in

2    first grade and was placed into a resource class at school

3    and was subjected to a lot of teasing from his classmates as

4    a result.  He started to get into fights at school because

5    of the teasing.  And due to the circumstances beyond his

6    control, he did not have a stable role model early in his

7    life.  Um, I believed that Xxxxxx could benefit from a

8    mentor, and in 2004, at the suggestion of a colleague, I

9    contacted Big Brothers Big Sisters of Utah to find Xxxxxx a

10   mentor.  Xxxxxx was matched with Mr. Cardenas and at the

11   time they seemed to be a perfect match.  They attended many

12   of the activities associated with the Big Brother program

13   together as well as activities sponsored by the organization

14   such as skiing and attending plays and things of the such.

15       In the summer of 2005, Tony started coming along on

16   many family camping trips with us where he and Xxxxxx would

17   fish, hike, and ride jet skis together, they would boat

18   together.  Tony was treated -- he was accepted into our

19   family and treated just like another member of our extended

20   family.  He tagged along on many family gatherings.  And

21   Xxxxxx himself went to many gatherings at the Cardenas home.

22       As you can see from the IEP report, Xxxxxx started

23   acting out violently in school in third through sixth

24   grades.  This, I believe, was a direct result of the years

25   of abuse that he sustained from Xxxxxx, I'm sorry, from

1        Mr. Cardenas.

2            Xxxxxx has been in counseling ever since November

3        17th, 2009.  And he was seen weekly for approximately a year

4        and now currently is seeing a counselor biweekly and will

5        continue to do so indefinitely for the foreseeable future.

6            Shortly after being notified of the crimes against my

7        son, I registered with the victim notification system.  And

8        shortly after that, I started getting bombarded with notices

9        of cases being brought against defendants arrested with

10       images of my son.  I have here on this table right here

11       (indicating), mind you, Your Honor, this is only a few

12       months, these are all notices of cases involving images of

13       my son that are circulating through the federal court system

14       right now.

15           In the beginning, I thought it would be helpful and I

16       started to catalog these to keep track of how many.  As you

17       can see here, I have nearly 100.  I stopped.  I no longer

18       had the stomach for this.  I stopped.  This, Your Honor, is

19       only six months of cases that are circulating through the

20       court system right now due to the crimes that this man

21       committed against my son.

22           These will follow my son for the rest of his life.  In

23       fact, when my son's grandchildren bury him, these images

24       will still be circulating through the courts.  Not only did

25       Tony rape my son repeatedly, he videotaped these

1    reprehensible crimes and he posted them on the Internet

2    without any regard to his future, any regard whatsoever, and

3    he posted those for any and every degenerate to access --

4    with access to the Internet to view.  He has made sure that

5    these vile crimes will follow my son for the rest of his

6    life.

7          Jeff Ross, with the FBI, has also informed me that not

8    only are these images circulating here in the U.S., they are

9    global.  Degenerates across the planet are viewing images of

10   my son being raped repeatedly.

11         While being questioned by Jeff Ross, after he was

12   arrested for these crimes, Tony said he cared about Xxxxxx.

13   Jeff asked Tony if he really cared about Xxxxxx how could he

14   hurt him in this way to which Tony replied, I did not hurt

15   Xxxxxx, you are hurting him by making him talk about it.

16         This man clearly has no remorse for the pain he has

17   caused my son, nor has he ever cared about Xxxxxx.  He has

18   only cared about his sick twisted self-gratification at

19   Xxxxxx's expense.  I am also aware that there are in --

20   during the investigation three other victims, victims of his

21   own family, were brought to light.

22         I am here asking not only justice for my son, Your

23   Honor, I'm asking justice for those very same victims.

24   I'm afraid that if you release this man, if you allow him to

25   ever walk out of prison, every child that comes in contact

1    with this man is in danger of being victimized by him.

2    Thank you.

3        THE COURT:  Thank you.

4        MS. DAIN:  Your Honor, this is the victim, the main

5    victim in this case.

6        THE COURT:  Thank you.  You may come forward.

7        THE VICTIM:  All I want to say right now is I don't

8    want to see him protected in prison.  I want to see him put

9    out in the main population for what he has done.  I don't

10   feel like he needs to be protected by anyone.  That's all I

11   have got to say.

12       THE COURT:  Thank you.

13       MS. DAIN:  And Your Honor this is the victim's sister.

14       MS. XXXXXXX XXXXXX:  Xxxxxxx Xxxxxx.  The worst

15   mistake I have made in my life to this day is not trusting

16   the first instinct I had about Tony.  I let my mom's

17   accusation of racism quiet my suspicions for the rest of his

18   time in our life.  Every time I questioned anything she had

19   an explanation.  She was always one step ahead of me.  My

20   mom is very protective on teaching her children what is good

21   and what is right.  She is almost overbearing when it comes

22   to the safety and well-being of her children.  Any questions

23   I ever had about what they were doing she always had an

24   explanation for it, she had already asked him.  I trusted

25   her judgment.  But he was in our lives and into our family's

1    place.  We accepted him as one of our own at birthday

2    parties, BBQ's, camping trips, holidays.  He was included

3    and involved in my brother's education.  In fact, he was

4    included in every aspect of his life.  We trusted him.  My

5    mom trusted him.  Xxxxxx trusted him.  I'm sorry.  Hold on.

6         When we found out what happened, I was so angry at

7    everyone.  I was angry at my mom because she didn't see it

8    and stop it.  Angry at my grandmother because she didn't see

9    and stop it.  I was angry at Casey because he wasn't around

10   and that's why my mom got him in Big Brother in the first

11   place.  Mostly I was mad at myself because I didn't trust

12   him from the git-go that I just let my brother go.

13        But really, when it all came down to it, none of us

14   can really be blamed because how could any of us know.  The

15   pain he has caused my grandma is unforgiveable.  When I see

16   the pain in her eyes every time his name is mentioned I can

17   feel it, my heart breaks for her.  I don't know who I hurt

18   for more though, my mom or Xxxxxx.  My mom is an amazing

19   woman.  The only thing that she wants, the only thing, is

20   for her children to be happy, healthy, and successful.

21   After everything that she has been through in her life, all

22   the pain, all the tears, all the betrayals, the struggles,

23   she stays strong and pushes forward for one thing and one

24   thing alone, her children.  Every move she makes she makes

25   for us.  Every decision she makes she makes for us.  She

1  lives and breathes for us.  I see my mom stumble and tumble

2  through the years but at the end of the day, when all is

3  said and done, she gets up and wipes off the dirt and moves

4  on with her head held high.

5      When I asked the agent I spoke to if Tony had raped my

6  brother, I saw her fall when she heard the word yes.  I felt

7  her break.  What you did to Xxxxxx made her question herself

8  as a mother.  The best that she is you made her doubt

9  herself.  She allowed you to be a part of our lives, a part

10  of my brother's life, and you spit in her face.  You are the

11  most vile monster.  You have damaged Xxxxxx for the rest of

12  his life.  I will never forget what you have done.  I will

13  never understand how you were able do the horrible things

14  you did behind your door and walk through ours and act as

15  though nothing was happening.  How could you torture a child

16  day after day, year after year, to be able to form the words

17  that you care about him and his happiness and his future.  I

18  will never understand how you could believe that if it --

19  that it wasn't you that was hurting Xxxxxx, it was the

20  police that were hurting him by bringing all of this out

21  into the light.  I will never understand.  You stole the

22  innocence of a child for your own sick sadistic selfish

23  needs.  Not just one child but several.  You exposed these

24  children to some of the most evil beings that walk this

25  earth.  You make good people question and doubt everything

1       that they thought they were.  Xxxxxx, I'm sure, has an idea

2       of how far the Internet goes, but I don't think he can fully

3       grasp the whole extent of it.  And one day he is going to

4       realize the full gravity of what has happened to him and all

5       his pain will start over.  I hope that one day, sorry.  That

6       is pretty much it.  Sorry.

7               THE COURT:  Thank you.  Anything further?

8               MS. DAIN:  Your Honor, I think Mr. Manross has

9       outlined thoroughly the nature of the crime in the

10      presentence report and I don't know that I need to go into

11      that.  I just remind the court that there are multiple

12      victims.  While you've only heard from what I would call him

13      the main victim, I certainly don't mean to make any less of

14      the other victims that are photographed and their pictures

15      are also circulated worldwide in this case.

16              We are recommending the mandatory minimum at this

17      time, and I think, Your Honor, at the request of defense

18      counsel we would like to set restitution over to sort that

19      through more thoroughly.

20              THE COURT:  Thank you.  Before I hear from

21      Mr. Delicino, is there anyone else in the courtroom that

22      wishes to be heard?  Not advised.  Yes, you may come

23      forward.

24              MR. DELICINO:  Judge, if we can approach very quickly.

25              THE COURT:  You may.

1          (Whereupon, a sidebar conference was held.)

2          THE COURT:  You need to say that again because it

3     wasn't picked up.

4          MR. DELICINO:  I think we probably should find out who

5     this is before we allow her to speak before the court and

6     make sure that I didn't know --

7          MS. DAIN:  I don't know who this is.  It might be the

8     mother of one of his nephews.  I'm not -- I might have met

9     her in the grand jury.  I don't recognize her.  It was so

10    long ago I think it is his sister or sister-in-law.

11         THE COURT:  I'll ask her to identify herself and what

12    her relationship is.

13         MS. DAIN:  Okay.

14         (Whereupon, the sidebar conference concluded.)

15         THE COURT:  If you would just identify yourself for

16    the record and then tell us what your relationship is.

17         MS. XXXXXXXX:  My name is Xxxxxxx Xxxxxxxx and we

18    being a victim to Mr. Cardenas.  Xx xxx xx Xxx Xxxxxxxx and

19    Xxxxxx Xxxxxxxx.  And the lady back there said that she went

20    through the same thing which we did and our sad part is that

21    we're a family, you know, pure blood.  And I just think that

22    he -- I can't believe it and I still couldn't believe that

23    what kind of person Cardenas is doing that to his own

24    family.  And it has been so hard for us to talk that my kids

25    didn't want to come in or know anything about what's going

1    on.  They just try not to remember things, if they did, you

2    know, because you know eventually it's going to come one day

3    to them, right?  So they just prefer not to know and see

4    what is going on with their xxxxx which is Antonio Cardenas.

5         All I like to say is, you know, I'm not no one to

6    forgive but only God knows what he did to my kids and he has

7    to pay whatever he has to be done.  That's all I have to

8    say.

9         THE COURT:  Thank you.  Anyone else who wishes to be

10   heard before we -- yes, you may come forward.

11        Tell us your name and what your relationship is.

12        MS. CARDENAS:  I am Zenaida and I'm his sister.  I am

13   here to tell everyone in this room to remember that we are

14   humans and sometimes people like do the wrong choices.  And

15   I believe in the United States Justice and all I want to say

16   is that hopefully taking in consideration all of his past

17   life and taking in consideration his criminal history, he is

18   not a criminal until he is declared criminal, and I'm his

19   sister and I will be his sister for life and I'm just hoping

20   that the right thing gets done today.

21        THE COURT:  Thank you.  Mr. Delicino, now you may

22   proceed.

23        MR. DELICINO:  Judge, it is a difficult thing to

24   temper requests for vengeance with requests for mercy.  And

25   I'm not suggesting that anyone is here for today is

1    vengeance.  But what they're here for today is for

2    punishment and rightfully so.  And the defendant is here to

3    acknowledge what he did and acknowledge the impropriety of

4    his actions, but also to look to the court for some measure

5    of mercy in the sense that he is requesting a sentence of

6    30 years.  As I suggested as I just stated, the defendant

7    did in fact plead guilty.  He acknowledged his remorse for

8    the actions that he took against the individuals and the

9    family members that you have heard from today.  He is

10   sincere in that remorse.  He could have proceeded to trial

11   with the same effective guideline range.  It would have been

12   a life guideline range had he gone to trial and lost.  What

13   we're here today is to ask the court to impose 30 years

14   which if we put into context judge is not an unreasonable

15   request.  Much of what the Sentencing Commission and the

16   Supreme Court have done in the past four or five years is

17   look to whether the guidelines are themselves reflective of

18   just sentences and whether they have inherent problems.  And

19   I would suggest today that this particular guideline that

20   we're dealing with in 2G2.1 is in this respect is somewhat

21   excessive.  And the reason I say that is because if we look

22   to comparable guidelines, for example, the murder guideline,

23   and we look to 2A1.1, if we had assumed that a murder had

24   taken place and Mr. Cardenas was responsible for the same

25   enhancement, the abuse of position of trust but pled guilty,

1    his guideline range would be 30 to life.  And that's

2    assuming that there had been a homicide that had taken

3    place.  Because of the sheer number and sheer volume of

4    enhancements that apply in this case, the guidelines in this

5    case have taken it to life.  But I would suggest that the

6    court can consider what is an appropriate sentence and the

7    fact that the guidelines in this case are slightly excessive

8    and impose a sentence of 30 years.

9         One of the court's considerations is to provide

10   rehabilitation -- to insure that the defendant is

11   rehabilitated before he is released.  And I would suggest to

12   the court that 30 years is an appropriate period of time to

13   ensure that that happens.  If, however, after 30 years of

14   incarceration the defendant still presents a risk and is not

15   a manageable risk, at that point the government can seek to

16   have defendant civilly committed.  So if we are here and

17   30 years from now Mr. Cardenas still poses the same risks to

18   people in the community, the government has measures it can

19   take to ensure that Mr. Cardenas is not released.  All of

20   that suggests that perhaps this court can impose a 30-year

21   sentence, a merciful sentence but also one that counts for

22   all of the considerations under the statute including just

23   punishment that it would significantly deter not only

24   Mr. Cardenas because large part it will incapacitate him,

25   but also because it will deter others.  It's a stiff

1    sentence and the message will be received hopefully loud and

2    clear by other individuals.  And I would submit that

3    30 years is an appropriate sentence in this case and ask the

4    court to impose that sentence.

5         THE COURT:  Thank you.  Mr. Cardenas, do you wish to

6    make a statement to the court?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  You may proceed.

9         THE DEFENDANT:  I can't even start to imagine, you

10   know, the pain that the victim's family and the victim

11   themselves, you know, are dealing with at this time.  And

12   for me to be the responsible one that created this, you

13   know, not just for the family, but for my family as well and

14   for society in general.  It's -- it was -- it was choices

15   that were made and now I've got to pay the consequences of

16   those choices.  And with that, you know, I -- I wish, you

17   know, the victims' family -- I mean it is hard to even, you

18   know, ask for forgiveness from them at this point because

19   obviously they're not ready to give it, but eventually

20   that's, you know, that's something that I would, you know, I

21   will hope that they get to that point because, you know, it

22   is a tough situation for all of them and I can't -- I can't

23   even imagine what they are going through right now and it is

24   a very difficult thing, you know.

25        The actions that were done, you know, under the

1    circumstances that I was in at the time, you know, is --

2    they're unimaginable and I can understand that, you know,

3    and I take responsibility for those.  And I have done

4    everything that I could on my side and on my power to be

5    able to assist the individuals that were part of this

6    investigation so that this kind of thing doesn't happen

7    again, this kind of thing doesn't happen to other victims,

8    you know.  And I know that's kind of a -- it's not an easy

9    thing to do to -- to be able to help bring, you know, bring

10   it up and talk about it and talk about it in a way that you

11   know you are wanting other -- other people and other victims

12   from not, you know, from this not happening to them.

13   Unfortunately, that's all I can do.  That's all I can do.

14   You know what happened has already happened and I'm doing

15   the only thing I could do after the events.  And in a lot of

16   ways, you know, this is what I needed.  You know what I

17   needed is to be in this situation to be locked up, to go and

18   serve prison time because of what I did.  This is what I --

19   what I needed in order to see what I had done.  You know, it

20   is almost like an addiction where somebody is going through

21   something but they don't realize it and then they don't

22   acknowledge it until later on -- until later on in life.

23   And I just, you know, I just pray that, you know, that they

24   will eventually find forgiveness in their hearts and as long

25   as that takes and that I am willing to, you know, do the

1    time.  You know the only thing I'm asking in return is to be

2    able to be given a second opportunity at being able to go

3    through the -- through anything, through any type of program

4    that is being offered so that I can, you know, I can help

5    myself as well, you know.  And it is kind of harsh saying

6    that knowing that they're struggling through this, but at

7    the same time you know I know I have it in me to be able to

8    do something else and to take something positive from all of

9    this -- from all of this situation.  I -- I pray for them

10   and I pray that they can, you know, find it in their hearts

11   and my family they don't like the situation that I am in and

12   they don't -- they dislike the fact that I made those

13   choices, but they have, you know, been there for me and I,

14   you know, I want to thank them for that because thanks to

15   them I have been able to find, you know, a little light at

16   the end of the tunnel and I can say that, you know, I have

17   been able to find the love of God through them.  And that's

18   all I want to say, Your Honor.  Thank you.

19        THE COURT:  Thank you.  Anything further before the

20   court makes a decision?

21        MS. DAIN:  Your Honor, one thing I forgot to mention

22   is that the United States would also be requesting after

23   whatever term Your Honor imposes a lifetime of supervision.

24        THE COURT:  Thank you.  Let me begin by explaining the

25   requirements that the Court must consider in determining

1    what an appropriate sentence is.  The statute that governs

2    the court's decision making process provides that the

3    sentence is to be sufficient but not greater than necessary

4    to meet the objectives of the statute.  We can begin in this

5    particular case with a mandatory minimum sentence of

6    30 years.  The Court, of course, has no choice but to impose

7    a sentence of at least 30 years.  There is, however,

8    discretion on the Court to impose a sentence of greater than

9    30 years given the fact that the guideline range is lifetime

10   in prison.

11       In making a decision about that, the Court is supposed

12   to -- is required to consider the following factors.  First,

13   we start with the fact that the guideline range above the

14   30 percent is discretionary with the court.  The court is

15   charged by the United States Supreme Court to exercise its

16   judgment, taking into account the unique circumstances of

17   each particular case.  Those circumstances include the

18   following.  The nature and circumstances of the offense.  In

19   this particular case, as is well documented, I believe and

20   understood, there was the nature of this offense was an

21   adult man placed in a position of confidence and trust to

22   help a young man who through his own gratifying -- to

23   gratify his own sexual needs and lack of discipline and

24   respect for the child engaged in sexual conduct that was

25   terribly damaging to the child.

1        The nature of the circumstances also involved the fact

2    that not only did he engage in this sexual conduct for

3    whatever reason to seek gratification or recognition or

4    acceptance in a perverse community, determined to distribute

5    these images that have now gone worldwide with hundreds of

6    people who are now viewing these images.  It is almost

7    impossible to stop the distribution of these kinds of

8    materials, and they will continue to be distributed for a

9    long period of time.

10        Certainly this conduct would provoke a long and a

11    serious sentence.  30 years is a long and serious sentence.

12    The question is should it be longer than 30 years.  The

13    other factor to be considered by the court, however, is the

14    history and circumstances of the defendant.  In reviewing

15    the presentence report and the supporting psycho-sexual

16    evaluation that was done of Mr. Cardenas, it becomes clear

17    that in many respects he too is a victim.  Although he

18    stands here as a perpetrator and a person who has caused

19    serious injury to others, he was a victim of early

20    sexualization and repeated incidences during the course of

21    his life that perhaps placed in him urges and desires that

22    are not normal, that caused him to act out in ways to cause

23    damage to others.  To what extent that should reduce the

24    sentence or impose -- require a sentence of 30 years I'm

25    still considering that, but that is a factor to be

1          considered.

2                  Perhaps all of us should take into account the

3          responsibility that we have in making sure that this kind of

4          early sexualization of our children doesn't produce urges in

5          our children when they grow to be of a more mature age that

6          cause them to act out in ways.  We all have that

7          responsibility.

8                  In addition, the Court is to take into account whether

9          or not there is adequate deterrence.  In this case, that is

10         an important factor because their psycho-sexual evaluation

11         indicates that Mr. Cardenas is a continuing risk of

12         repeating this crime should he have the opportunity to do

13         so.  That's the current state of affairs.  I'm required to

14         use my best judgment to determine whether 30 years from now

15         it will continue to be a significant risk of him harming

16         other people.  There is nothing before the Court to indicate

17         what the passage of time and treatment may do in terms of

18         alleviating that risk.

19                 The need to protect the public from further crimes is

20         a part of that same evaluation.  The Court must make a

21         decision as to whether or not at age 63 Mr. Cardenas is

22         still a significant risk to other people.  The Court is also

23         to take into account the need for educational, medical, and

24         other kinds of treatment.  Certainly in this case

25         Mr. Cardenas is in need and has requested that he be given

1    the opportunity to have treatment and counseling that will

2    help him address the problems that resulted in this crime.

3    Taking all of those factors into account, it is my judgment,

4    in this particular case, that a sentence of somewhat greater

5    than 30 years is appropriate.  Given the amount of

6    distribution involved, the age of the victim, the position

7    of trust and confidence that was shared, and I believe that

8    a sentence of 35 years, which would be 420 months, is the

9    appropriate sentence in this case.

10        I will now you impose sentence.  It is the judgment of

11   the Court that the defendant, Antonio Cardenas, be placed in

12   the custody of the United States Bureau of Prison for a

13   period of 420 months.  Upon release from confinement, the

14   defendant will be placed on supervised release for a term of

15   the rest of his life.  Within 72 hours, the defendant, if

16   the defendant is not deported, he is to report to the

17   probation office for supervision.  The Court finds that the

18   defendant poses a low risk for future substance abuse and

19   does not impose any mandatory drug testing.  The defendant

20   is required to submit to the collection of a DNA sample at

21   the direction of the Bureau of Prisons.  The defendant is

22   required under the Adam Walsh Child Protection and Safety

23   Act to report the address where he will reside and any

24   subsequent change of residence to the probation officer

25   responsible for his supervision and is required to register

1     as a sex offender in any state where he resides or is

2     employed or carries on a vocation or is a student.

3          Based on the instant offense, the defendant's criminal

4     history, the defendant is classified as a Tier 3 Sex

5     Offender pursuant to Title 1 subtitle A of the Adam Walsh

6     Child Protection Safety Act.  As a result, the defendant

7     will be required to register according to the provisions of

8     this Act for life upon release from imprisonment if he

9     remains in the United States.

10          The defendant shall not commit any federal, state, or

11     local crime, and as a convicted felon is prohibited from

12     possessing a firearm or other dangerous device.  The

13     defendant shall not illegally possess a controlled substance

14     and shall comply with the standard conditions of

15     supervision.  The defendant will also be remanded to the

16     Bureau of Immigration and Custom Enforcement for deportation

17     proceedings once he is released.

18          As a condition of supervision, the defendant shall not

19     illegally re-enter the United States.  If he should return

20     to the United States, he's instructed to contact the United

21     States Probation Office in the District of Utah.  Court

22     finds that the defendant does not have the ability to pay a

23     fine and waives the fine.  The Court will delay imposing

24     restitution for 90 days for the parties to provide

25     additional information as to what the appropriate amount of

1    restitution should be.  The defendant is required to pay a

2    special assessment fee in the amount of $100.00 which is due

3    immediately.

4          Are there other counts to be dismissed, Ms. Dain?

5          MS. DAIN:  That is a good question, judge.

6          THE COURT:  I believe are.

7          MS. DAIN:  I believe there are, Your Honor, so the

8    United States would move to dismiss the remaining counts.

9          THE COURT:  The Court will dismiss all counts other

10   than the count to which the defendant has pled guilty and on

11   which he has been sentenced.  I advise the defendant that

12   should he wish to appeal the Court's sentence any appeal

13   must be filed within 14 days.

14         Are there any recommendations that the defendant would

15   like me to make to the Bureau of Prisons?

16         MR. DELICINO:  Not at this time, judge.

17         THE COURT:  He did mention treatment.  Do you want --

18   do you request that I ask the Bureau of Prisons to evaluate

19   him and consider him for sex offender treatment?

20         MR. DELICINO:  I would.  I would.

21         THE COURT:  I will make that recommendation.  Anything

22   further in terms of clarification that should be included in

23   the sentence that I have missed.

24         MS. DAIN:  I don't believe so, Your Honor.

25         THE COURT:  Let's set a time for the hearing on the

1    restitution.  If it is agreed to by stipulation, we can

2    cancel the hearing.  Mr. Taylor, would you pick a date for

3    us?

4          THE CLERK:  September 18th at 3:30.  Anyone aware of a

5    problem with that date?

6          MS. DAIN:  That should be fine, Your Honor.

7          MR. DELICINO:  That should be fine, judge.

8          THE COURT:  Thank you.  We'll be in recess.

9          (Whereupon, the hearing concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1     STATE OF UTAH              )

2                                )ss

3     COUNTY OF SALT LAKE        )

4

5             I, Laura W. Robinson, Certified Shorthand

6     Reporter, Registered Professional Reporter and Notary Public

7     within and for the County of Salt Lake, State of Utah, do

8     hereby certify:

9             That the foregoing proceedings were taken before

10    me at the time and place set forth herein and were taken

11    down by me in shorthand and thereafter transcribed into

12    typewriting under my direction and supervision;

13            That the foregoing pages contain a true and

14    correct transcription of my said shorthand notes so taken.

15            In witness whereof I have subscribed my name

16    this 22nd day of May, 2017.

17

18                         _____

19                         Laura W. Robinson

20                         RPR, FCRR, CSR, CP

21

22

23

24

25
```